# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MCKINLEY ABRAM, # 069373** | **CIVIL ACTION** |
| **VERSUS** | **NO. 05-0194** |
| **BURL CAIN, WARDEN** | **SECTION "N" (6)** |

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.

Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2). Accordingly, it is recommended that the petition be **DENIED WITH PREJUDICE.**

## I. PROCEDURAL HISTORY

On August 20, 1996, petitioner, McKinley Abram, a state prisoner presently incarcerated in the Louisiana State Penitentiary in Angola, Louisiana, was charged, via a bill of information, with simple burglary of a motor vehicle.[1] On May 7, 1998, following trial by jury, petitioner was determined to be guilty as charged. On January 12, 1999, a multiple bill hearing was conducted.[2] On February 9, 1999, the trial court determined petitioner to be a fourth-felony offender and sentenced him to life imprisonment.[3] On March 21, 2001, pursuant to the state appellate court's remand, the trial court re-sentenced petitioner as a fourth-felony offender to a 30-year term of imprisonment,[4] a term which the Louisiana Fourth Circuit ultimately endorsed on November 13, 2002. *See State v. Abram*, 832 So.2d 1050 (La. App. 4 Cir. 2002).

On August 29, 2003, Abram filed a state post-conviction application with the

---

[1] A copy of the pertinent bill of information is contained in the State rec., vol. 4 of 4.

[2] A copy of the transcript of the January 12, 1999 multiple bill hearing is contained in the State rec., vol. 3 of 4.

[3] A copy of the transcript of petitioner's February 9, 1999 sentencing is contained in the State rec., vol. 1 of 4.

[4] A copy of the transcript of petitioner's March 27, 2001 sentencing is contained in the State rec., vol. 1 of 4.

state trial court. The trial court denied relief on the merits on September 16, 2003.[5]
Abram then filed for writ of review with the appellate court which denied relief, finding no error in the trial court's judgment.[6] A subsequent writ to the Louisiana Supreme Court was likewise unsuccessful. The Louisiana Supreme Court denied relief on December 17, 2004. *See State ex rel. Abram v. State*, 888 So.2d 854 (La. 2004).

On or about January 4, 2005[7], Abram filed the instant petition for writ of habeas corpus, arguing 1) that the state trial court erred in denying Abram's motion to suppress; and, 2) that he was subjected to an ex post facto application of the Louisiana habitual offender law's "cleansing period."[8] The State, in its original response (rec.

---

[5]See State court rec., vol. 1 of 4, for a copy of the decision.

[6]See State court rec., vol. 1 of 4, for copy of the decision.

[7]*See* Federal rec., doc. no. 1. This January 4, 2005, filing date was ascertained via the court's use of the federal "mailbox rule." Under this rule, a pleading filed by a prisoner acting *pro se* is considered to be filed for prescriptive purposes on the date it is delivered to prison officials for mailing, rather than the date it is received by the court. *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). Generally, the date a prisoner signs his petition is presumed to be the date he delivered it to prison officials for mailing. *See Colarte v. Leblanc*, 40 F.Supp.2d 816, 817 (E.D. La. 1999) (assumed that petitioner turned his *habeas corpus* application over to prison officials for delivery to this Court on the date he signed his application); *Magee v. Cain*, 2000 WL 1023423, *4 n.2 (E.D. La. 2000) (inferred that filing date and signature date of habeas petition were the same); *Punch v. State*, 1999 WL 562729, *2 n.3 (E.D. La. 1999) (may reasonably be inferred that prisoner delivered habeas petition to prison officials for mailing on date he signed petition).

[8]*See* Federal rec., doc. no. 1, p. 5.

doc. no. 10), asserted that the instant action was untimely. However, the district court, in accordance with the undersigned magistrate judge's report and recommendation (rec. doc. no. 11), issued an Order (rec. doc. no. 15), rejecting the State's response, determining the instant action to be timely and ordering that the State file a response addressing the merits of petitioner's claims. In its supplemental response (rec. doc. no. 24), the State concedes that petitioner has exhausted his state court remedies as required under *Rose v. Lundy*, 455 U.S. 509, 102 S. Ct. 1198, 71 L. Ed. 2d 379 (1982). Accordingly, this court shall review the pertinent facts, then proceed to address the merits of petitioner's claims.

## II.  FACTS[9]

On August 20, 1996, at about 2:00 a.m., Officer Michael Macelli was patrolling the area of Esplanade Avenue when he observed the appellant, McKinley Abram, walking against traffic and pushing a large black box with attached wheels. The box is one specially made for housing and protecting electronic gear and is known as an anvil case. There was a duffel bag on top of the case. Considering the hour and the high incidence of vehicle break-ins in the area, Officer Macelli stopped the appellant

---

[9]The facts are taken from the state appellate court's opinion on direct appeal, *State v. Abram*, 786 So.2d 984 (TABLE, No. 2000-KA-0413) (La. App. 4 Cir. 2/28/01), a copy of which is contained in the State rec., vol. 1 of 4.

to investigate.

The appellant at first refused to respond to questioning. However, when Officer Macelli asked him what was in the box, he replied, "clothes." Officer Macelli opened the box and observed audio and video equipment. Officer Macelli then looked in the duffel bag. It contained bills and personal papers, among other things. The appellant identified himself to Officer Macelli. The appellant's name did not match the name on the bills. At this point, Officer Macelli obtained the name of Tracy Price from a cell phone bill. He spoke with Ms. Price and learned that her husband was at the R Bar in the area. Officer Macelli relocated near the R Bar, where he located the vehicle described by Ms. Price. It was a maroon Isuzu Trooper. The passenger side vent window appeared to have been pried open. Officer Macelli called out a Crime Lab Technician to take fingerprints.

Jeff Price estimated that he was in the R Bar for about an hour visiting a friend. When he returned to his vehicle, he observed a police vehicle next to it, with the trunk of the police vehicle open and his equipment inside. Mr. Price testified that his vehicle was locked when he left to go into the bar. He identified the box and equipment as his own, as well as the contents of the duffel bag, with the exception of a painter's tool.

Three fingerprints were obtained from Mr. Price's vehicle. Only one was suitable for comparison. That print was a positive match for the appellant's fingerprint.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") includes a comprehensive overhaul of federal habeas corpus legislation, including 28 U.S.C. § 2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law where there has been an adjudication on the merits in State court proceedings.

State court determinations of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference unless they were "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States."  *Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The United States Supreme Court has advised that:

> Under the "contrary to" clause, a federal habeas corpus court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that

principle to the facts of the prisoner's case.

*Williams v. Taylor*, 529 U.S. 1056, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000); *Hill*, 210 F.3d at 485.  Questions of fact found by the state court are "presumed to be correct ... and we will give deference to the state court's decision unless it `was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Hill*, 210 F.3d at 485, *quoting* 28 U.S.C.§ 2254(d)(2).

## IV.  ANALYSIS

### A.  Fourth Amendment Violation

Petitioner argues that the arresting officer, Officer Macelli, violated his Fourth Amendment rights by first opening the wheeled black box which he was strolling on the street against traffic, then opening the duffle bag located on top of the box. Petitioner's ability, however, to obtain federal habeas corpus relief with regard to an alleged Fourth Amendment violation is greatly limited by the United States Supreme Court's decision in *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976).  In *Stone*, the United States Supreme Court held that a state prisoner is not entitled to federal habeas relief on the ground that evidence obtained in an unconstitutional manner was introduced at trial as long as the State provided "an opportunity for full and fair litigation" of his Fourth Amendment claim.  *Id*. at 3052.

*See also Davis v. Blackburn*, 803 F.2d 1371, 1372 (5th Cir. 1986). A review of the state court record reflects that, in this case, such an opportunity was afforded to petitioner.

On December 9, 1996, a hearing was conducted before the state trial court, pursuant to which Officer Macelli offered both direct and cross-examination testimony regarding his search of the black box and duffel bag.[10] Thereafter, the court listened to argument on the part of counsel, then denied petitioner's motion to suppress based upon the "totality of circumstances".[11] The matter was later considered, and rejected, on the merits by the Louisiana Fourth Circuit Court of Appeal.[12] Clearly, petitioner was provided in the state court system with "an opportunity for full and fair litigation" of his Fourth Amendment claim. Accordingly, he is not entitled to federal habeas corpus relief in connection with said claim.

### B. Ex Post Facto Clause Violation

Art I, §10, cl. 1 of the United States Constitution provides, in pertinent part: "No state shall . . . pass any Bill of Attainder, ex post facto Law, or Law impairing the

---

[10] A copy of the transcript of the December 6, 1996 hearing on petitioner's motion to suppress is contained in the State rec., vol. 3 of 4.

[11] *See* December 6, 1996 hearing transcript at p. 11.

[12] *Abram*, 786 So.2d 984, a copy of which is in the State rec., vol. 1 of 4.

Obligation of Contracts . . . ."  An ex post facto law, by definition, is one that "impermissibly applies retroactively . . . by criminalizing an action that was legal when it was committed."  Black's Law Dictionary 620 (8th ed. 2004).  The United States Supreme Court has long recognized that the constitutional prohibition of ex post facto laws applies only to criminal or penal statutes.  *Calder v. Bull*, 3 U.S. 386 (1798).[13]  Moreover, for a criminal or penal law to be considered as applied ex post facto, it "must apply to events occurring before its enactment, and it must disadvantage the offender affected by it."  *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d. 17 (1981).

Petitioner argues that he "suffered a substantial Ex Post Facto violation when he was adjudicated a fourth felony offender under the current multiple bill statute that was not in effect when his prior convictions came about."[14]  Louisiana's current multiple bill statute, La.R.S. 15:529.1(C), as amended in 1995 and as applied to

---

[13] In *Calder*, Justice Chase delineated the type of laws which would run afoul of the ex post facto prohibition:  "1st. Every law that makes an action, done before the passing of the law, and which was innocent when done, criminal; and punishes such action.  2d. Every law that aggravates a crime, or makes it greater than it was, when committed.  3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed.  4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Id*. at 390.

[14] *See* Federal rec., doc. no. 1, p. 15.

petitioner, provides, in pertinent part:

> The current offense shall not be counted as, respectively, a second, third, fourth, or higher offense if more than ten years have elapsed between the date of the commission of the current offense or offenses and the expiration of the maximum sentence or sentences of the previous conviction or convictions, or adjudication or adjudications of delinquency, or between the expiration of the maximum sentence or sentences of each preceding conviction or convictions or adjudication or adjudications of delinquency alleged in the multiple offender bill and the date of the commission of the following offense or offenses.

Earlier versions of the above statute provided for shorter "cleansing periods", i.e, a shorter number of years between the date of the commission of the current offense and the expiration of the maximum sentence of a preceding offense for purposes of essentially wiping the prior offense from one's record for purposes of using said offense to find a defendant to be a second, third, fourth, or higher felony offender. Because the requisite cleansing period, as set forth under the version of LSA-R.S. 15:529.1(C) in existence in 1990, when petitioner committed his third felony offense, had passed between his second and third felony offenses, petitioner argues that his second offense was essentially wiped off of his record forever and its use, in connection with his current conviction, to adjudicate him to be a fourth felony offender, constitutes a violation of the constitutional prohibition against ex post facto laws.

The U.S. Supreme Court has held that "[e]nhancement statutes, whether in the nature of criminal history provisions such as those contained in the Sentencing Guidelines, or recidivist statutes, [such as LSA-R.S. 15:529.1,] which are commonplace in state criminal laws, do not change the penalty imposed for the earlier conviction." *Nichols v. United States*, 511 U.S. 738, 746, 114 S. Ct. 1921, 1927, 128 L.Ed.2d. 745 (1994)(emphasis added). *See also Gryger v. Burke*, 334 U.S. 728, 731, 68 S.Ct. 1256, 1258, 92 L.Ed. 1683 (1948) (an enhanced sentence is not a new jeopardy or additional penalty for an earlier crime but rather a stiffened penalty for the latest offense which is considered an aggravated offense because it is a repetitive one.) Thus, the relevant offense, for purposes of analyzing the ex post facto implications of repeat offender statutes, is the current crime, not the earlier crime or crimes. *Accord U.S. v. Rasco*, 123 F.3d 222, 227 (5th Cir. 1997), *cert. denied*, 522 U.S. 1083, 118 S.Ct. 868, 139 L.Ed. 2d 765 (1998); *United States v. Ursidae-Nunez*, 18 F. 3d 730, 734 (9th Cir. 1994).  Since petitioner's argument before this court is contingent upon viewing the relevant offense as his third offense, which he committed in 1990, his argument must be rejected.

The Ex Post Facto Clause's prohibition extends only to a statute which "punishes as a crime an act previously committed, which was innocent when done;

11

which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with a crime of any defense available according to law at the time when the act was committed." *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2718, 111 L.Ed.2d. 30 (1990). In petitioner's case, the 1995 amendment to LSA-R.S. 15:529.1(C)'s cleansing period did not apply to a criminal act "previously committed" because the relevant act, the 1996 simple burglary of a motor vehicle, was committed *after* the change in the multiple offender law. Nor did the change in the cleansing period retroactively make the punishment for the 1996 simple burglary of a motorized vehicle more severe. Finally, since 15:529.1(C)'s amendment occurred prior to the commission of petitioner's present crime of simple burglary of a motorized vehicle, he was not deprived of a defense to that crime through an ex post facto application of law. In sum, the paramount concern of the Constitution's ex post facto prohibition is that an individual be given fair notice of a crime or of punishment for a crime prior to the crime being committed. See *Weaver*, 450 U.S. at 29, 101 S.Ct. at 964. Since 15:529.1(C) was amended prior to petitioner's commission of his fourth felony offense, this notice requirement was met. Petitioner thus fails to show that the increased cleansing period provided under the habitual offender statute in effect at the time of his present conviction (for which he received the enhanced sentence) violated

the prohibition against ex post facto application of law.

Accordingly;

## RECOMMENDATION

It is hereby **RECOMMENDED** that the application for federal habeas corpus relief filed on behalf of petitioner, McKinley Abram, be **DENIED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).

New Orleans, Louisiana, this __15th__ day of _____August_____, 2006.

_____
LOUIS MOORE, JR.
United States Magistrate Judge